JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Timothy Chiarolanza

**DEFENDANTS**

Lycoming College Welfare Benefit Plan & UNUM Life Insurance Company of America

**(b)** County of Residence of First Listed Plaintiff ______
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kevin Console, Esq., Console Mattiacci Law
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Employee Retirement Income Security Act ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B)

Brief description of cause:
Plaintiff was improperly denied LTD benefits in violation of federal law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ In excess of $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 08/21/2026

SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

# CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Timothy Chiarolanza | : | CIVIL ACTION |
| v. | : | |
| Lycoming College Welfare Benefit Plan and<br>UNUM Life Insurance Company of America | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 08/21/2026 | [signature] | Plaintiff, Timothy Chiarolanza |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-7676 | (215) 689-4137 | kevinconsole@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: Doylestown, Pennsylvania

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☒ 16. All Other Federal Question Cases. *(Please specify)*: ERISA

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TIMOTHY CHIAROLANZA**<br>**Doylestown, PA 18901**<br><br>**Plaintiff,**<br>**v.**<br><br>**LYCOMING COLLEGE WELFARE BENEFIT PLAN**<br>**2211 Congress Street**<br>**Portland, Maine 04122**<br><br>**AND**<br><br>**UNUM LIFE INSURANCE COMPANY OF AMERICA**<br>**2211 Congress Street**<br>**Portland, Maine 04122**<br>**Defendant.** | : | **CIVIL ACTION NO.** |

**COMPLAINT**

## I. INTRODUCTION

Plaintiff, Timothy J. Chiarolanza, brings this action against Defendants Lycoming College Welfare Benefit Plan ("Plan") and UNUM Life Insurance Company of America ("UNUM"), the insurer and Claims Administrator of the Plan. Plaintiff was approved for long term disability ("LTD") benefits on May 24, 2022, as he was determined disabled and entitled to LTD benefits by Defendants. Plaintiff was then improperly denied LTD benefits by Defendants, in violation of the Employee Retirement Income Security Act ("ERISA") §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). Plaintiff seeks reinstatement into the Plan, an order that Plaintiff is entitled to receive LTD benefits under the Plan going forward, all

monies owed to Plaintiff for Defendants' improper denial of Plaintiff's LTD benefits, and all attorneys' fees and costs.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under ERISA §502(a), 29 U.S.C §1132(a). Additionally, this Court has subject matter jurisdiction pursuant to ERISA §502(e)(1) and (f), 29 U.S.C. §1132(e)(1) and (f).

2. This court has personal jurisdiction over Defendants because each resides within the United States or is subject to service of process in the United States pursuant to ERISA §502(e)(2), 29 U.S.C. §1332(e)(2), and because each Defendant does business in this District.

3. Venue is proper in this District under ERISA §502(e)(2), 29. U.S.C. §1132(e)(2) because this is a District where Defendants may be found, the Plan is administered, and the breach of Defendants' obligation to provide benefits occurred.

4. Venue is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omission giving rise to the claim occurred in this District.

5. Plaintiff received a termination of his claim for LTD benefits on August 22, 2023.

6. On April 25, 2024, the Plan issued its final decision denying Plaintiff's administrative appeal of the termination of his LTD benefits.

7. Thus, Plaintiff has exhausted all available administrative remedies with respect to his claims for LTD benefits through the timely use of the Plan's internal appeal process.

## III. PARTIES

8. Plaintiff, Timothy J. Chiarolanza, is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Doylestown, Pennsylvania.

9. Plaintiff is a former employee of Lycoming College, and has been, at all relevant times, a "participant" in the Lycoming College Welfare Benefit Plan ("Plan") within the meaning of ERISA §3(7), 29 U.S.C. §1002(7).

10. Plaintiff has been, at all relevant times, an "eligible person," entitled to benefits under the Plan.

11. The Plan is, and was at all relevant times, an "employee welfare benefit plan" and an "employee benefit plan" within the meaning of ERISA §§3(1)(A), 3(3), 29 U.S.C. §§ 1002(1)(A), 1002(3).

12. UNUM Life Insurance Company of America is a Maine corporation with a principal place of business located at 2211 Congress Street, Portland, Maine 04122.

13. UNUM regularly conducts business in Pennsylvania.

14. UNUM insures the Plan and issued the Plan to Lycoming College.

15. UNUM is the claims administrator for the LTD benefits under the Plan and is responsible for administering claims under the Plan.

16. As the claims administrator, UNUM has a "fiduciary" duty within the meaning of ERISA.

17. Upon information and belief, UNUM was the final decision maker regarding the administrative appeal of Plaintiff's claims for LTD benefits under the Plan.

## IV. FACTUAL ALLEGATIONS

### *Plaintiff's Employment at Lycoming College and His Disabling Symptoms*

18. On or about August 31, 2021, Plaintiff began employment with Lycoming College as the Head Strength and Conditioning Coach.

19. Plaintiff's job duties at Lycoming College as the Head Strength and Conditioning Coach included, but were not limited to:

a. Overseeing all aspects of the Lycoming College Strength and Conditioning Program, ensuring that it strictly follows the NCAA Sport Science Institute's Interassociation Recommendations of Prevention of Catastrophic Injury and Death;
b. Coordinating with all head coaches;
c. Managing web based programs;
d. Conducting strength and conditioning workouts for all of Lycoming College's varsity sports;
e. Providing annual cost estimates for equipment and facility needs
f. Knowing and abiding by NCAA Division III regulations and Middle Atlantic States Athletic Conference rules;
g. Successfully completing the annual NCAA rules test;
h. Recruiting, training, and supervising assistance coaches;

i. Maintaining certification by the National Strength & Conditioning Association or by the Collegiate Strength and Conditioning Coaches Association;

j. Maintaining current CPR/First Aid certification.

20. Plaintiff's essential job duties required significant cognitive functioning, mental concentration, critical thinking, and mental stamina, including the ability to perform effectively under stress and managing coaches and athletes.

21. Plaintiff's essential job duties required intense physical exertion, including lifting heavy amounts, frequent standing, walking, stooping and kneeling.

22. On or about November 16, 2021, Plaintiff was struck by a car as a pedestrian and suffered multiple injuries, including but not limited to:

a. Traumatic brain injury;

b. Ruptured aorta;

c. Compound fractures of the tibia and fibula;

d. Separated pelvis;

e. Collapsed lung;

f. Trachea opening;

g. Broken shoulder blade; and

h. Multiple lacerations.

23. Plaintiff was immediately hospitalized following the accident, where he underwent multiple surgeries and remained hospitalized for over three (3) weeks.

24. Following his discharge from hospitalization on or about December 9, 2021, Plaintiff was moved to an inpatient rehabilitation facility where he resided until approximately January 28, 2022.

25. As a result of the injuries sustained in the November 16, 2021, accident, Plaintiff was unable to perform his essential job duties.

26. Plaintiff continues to experience a range of symptoms, including fatigue, feelings of overwhelm, impaired reading comprehension, memory loss, cognitive processing difficulties, impaired ambulation and balance, and difficulty concentrating.

27. Plaintiff became "disabled" within the meaning of the Plan as a result of the injuries he sustained in the accident.

28. Since November 16, 2021, Plaintiff has been and continues to be "disabled" within the meaning of the Plan.

29. Plaintiff's last day of employment with Lycoming College was November 16, 2021.

30. Plaintiff has not worked in any capacity since November 16, 2021 as a result of his disabling injuries.

***Plaintiff Applies and is Approved for Short Term Disability Benefits***

31. Plaintiff was eligible for short term disability ("STD") benefits through his employment with Lycoming College, as part of the Lycoming College Welfare Benefit Plan.

32. Plaintiff applied for and was granted STD benefits.

33. Plaintiff's STD benefits were administered by UNUM.

34. Plaintiff was approved for STD benefits based on UNUM'S conclusion that Plaintiff suffered from a "disability" within the meaning of the Plan.

35. Under the Lycoming College Welfare Benefit Plan, "disability" is defined as "limited from performing the material and substantial duties of your regular occupation due to sickness or injury and having a 20% or more loss in your indexed monthly earnings due to the same sickness or injury."

36. It was determined under the Plan that Plaintiff's symptoms prevented him from doing the essential functions of his regular occupation as a Head Strength and Conditioning Coach.

37. While receiving STD benefits, Plaintiff continued to receive medical treatment; however, his symptoms persisted.

38. Plaintiff stopped receiving STD benefits on or about February 11, 2022.

***Plaintiff Applies and is Initially Approved for Long Term Disability Benefits***

39. Plaintiff applied for LTD benefits under the Lycoming College LTD Plan.

40. As part of his application for LTD benefits, Plaintiff provided UNUM with all necessary medical releases and authorizations to allow UNUM to independently and directly obtain Plaintiff's medical records from his healthcare providers.

41. By letter dated May 5, 2022, UNUM acknowledged Plaintiff's properly filed claim for LTD benefits, but requested that Plaintiff complete and return the Employer, Employee, and Authorization section(s) of the claim form.

42. Plaintiff was granted LTD benefits on or about May 24, 2022.

43. In approving Plaintiff's claim, UNUM acknowledged that Plaintiff became disabled under the Plan on or about November 16, 2021, and that Plaintiff was unable to

perform the material and substantial duties of his regular occupation as defined in the policy.

44. Further, UNUM informed Plaintiff in its approval letter that it would follow up in August 2022 to obtain a full medical update and request any applicable medical records.

***UNUM Reverses its Initial Approval of Plaintiff's LTD Benefits***

45. On or about August 22, 2023, UNUM reversed its initial decision to approve Plaintiff's LTD benefits and informed Plaintiff that UNUM would no longer continue paying LTD benefits.

46. In reversing its initial approval of Plaintiff's LTD claim, UNUM determined that Plaintiff was no longer "disabled" under the Plan.

47. UNUM's determination that Plaintiff was no longer disabled under the Plan was false, arbitrary and capricious, and unsupported by Plaintiff's medical records.

48. Under the Plan, an employee is not entitled to receive LTD benefits for his or her "disability" if the employee is able to perform the material and substantial duties of his or her occupation.

49. Plaintiff's diagnosis has remained the same since his accident in November 2021.

50. While the severity of Plaintiff's symptoms waxes and wanes, Plaintiff has suffered and continues to suffer from a traumatic brain injury.

51. In its initial approval letter of May 24, 2022, UNUM did not dispute that Plaintiff was "disabled" within the meaning of the Plan as a result of the November 16, 2021 accident.

52. In order to subsequently deny LTD benefits on the basis that Plaintiff is not “disabled” within the meaning of the Plan, UNUM had to conclude that as of August 22, 2023, Plaintiff no longer suffered from a traumatic brain injury in a way that materially and substantially impacted his duties and responsibilities as a Head Strength and Conditioning Coach.

***UNUM’s Decision to Reverse Plaintiff’s LTD Benefits is Unsupported by the Medical and Vocational Evidence***

53. As part of UNUM’s decision to stop payments pursuant to Platiniff’s LTD benefits, UNUM relied on a vocational rehabilitation consultant who determined that Plaintiff’s occupation at the time of his accident was an Athletic Trainer.

54. UNUM’s vocational review found that to perform the job of Athletic Trainer, an individual must be able to frequently lift 10-25 pounds, move objects a greater than negligible amount, up to 10 pounds, stand, walk, stoop, kneel, crouch, talk, handle objects and reach with both hands.

55. UNUM’s vocational review found that to perform the job of Athletic Trainer, an individual must be able to occasionally lift 20-50 pounds, sit, and bilaterally use fingers.

56. UNUM’s vocational review determined that the job of Athletic Trainer requires visual demands such as near and far acuity, depth perception, and field of vision.

57. From a cognitive perspective, UNUM’s vocational review found that Athletic Trainers do cognitively skilled work, including dealing with people, directing, controlling and planning the activities of others, making judgments and decisions, and effectively performing under stress.

58. Further, UNUM’s vocational review found the material and substantial duties of an Athletic Trainer include:

a. instructing and guiding professional and amateur athletes;

b. assessing physical condition and giving advice to assist with treatments for professional and amateur athletes to maintain maximum physical fitness for participation in athletic competition;

c. prescribing routine and corrective exercises to strengthen muscles;

d. recommending special diets to build health and promote weight management for athletes;

e. massaging athletes' bodies to relieve soreness, strains, and bruises;

f. rendering first aid to injured players, such as giving artificial respiration, cleaning and bandaging wounds, and applying heat and cold to promote healing;

g. calling physicians for injured individuals, as required;

h. wrapping ankles, fingers, or wrists of athletes in synthetic skin, protecting gauze, and adhesive tape to support muscles and ligaments;

i. treating chronic minor injuries and related disabilities to maintain athletes' performance; and

j. may give heat and diathermy treatment as prescribed by health service.

59. Unum interviewed Plaintiff on August 3, 2023, regarding his symptoms. During the telephone interview, Plaintiff relayed that he did not feel much had changed as his brain injury remained his biggest challenge, and he continued to experience the following symptoms:

a. Impaired ambulation and balance;

b. Delayed reaction time;

c. Word-finding difficulty;

d. Memory loss; and

e. Cognitive processing difficulties.

60. During the telephone interview with Plaintiff on August 3, 2023, Plaintiff relayed that he is still unable to conduct usual household chores and activities, including cooking, cleaning, laundry, dishes, and vacuuming.

61. UNUM further relief on the following facts as a basis for terminating Plaintiff's LTD benefits:

a. Plaintiff was released from rehabilitation in June 2022;

b. Plaintiff was released to drive in October 2022;

c. Plaintiff underwent a computed tomography angiography ("CTA") that has demonstrated stable results;

d. Plaintiff shared with UNUM that he was able to participate in a motivational talk with students about his experience for approximately an hour, go to the gym 3-4 days per week, and participate in some household chores;

e. UNUM monitored Plaintiff's activities in May 2023 and observed Plaintiff walking normally and lifting and moving beverage cases; and

f. Plaintiff was cleared for return to work without restrictions and limitations by his treating physician, Dr. Loh, in July 2023.

62. Although Plaintiff's condition had improved as of August 2023, Plaintiff's diagnoses remained the same, and he continued to suffer from symptoms of a traumatic brain injury.

63. UNUM'S stated reasons for denying Plaintiff's LTD benefits claim are contrary to the evidence.

64. There is no medical evidence that Plaintiff can perform the material and substantial duties of his occupation as a Head Strength and Conditioning Coach, because his occupation involves medium physical demands and skilled mental and cognitive demands.

65. Presently, Plaintiff remains unable to perform the medium physical demands and skilled mental and cognitive demands required of his occupation.

66. UNUM has placed an unreasonably high value on the opinion of Plaintiff's vascular surgeon, opting to ignore the medical opinions of Plaintiff's other treating physicians.

67. Plaintiff's treating Rehabilitation specialist, Dr. Maneyapanda, and general care practitioner, Julianne Tobin, CRNP, agree that Plaintiff's complex traumatic brain injury and associated trauma prevent him from performing the duties and responsibilities required of a full-time Head Strength and Conditioning Coach.

68. Further, UNUM has placed an unreasonably high value on a singular observation of Plaintiff, despite a clear, documented record indicating that the severity and pervasiveness of Plaintiff's symptoms vary on a daily basis.

69. Plaintiff's position as Head Strength and Conditioning Coach requires him to meet with and actively train student athletes on strength and conditioning skills, coordinate with all head coaches at the college, ensure that the college's Strength and Conditioning Program abides by the NCAA's strict regulations, maintain certifications in

the area of Strength and Conditioning, maintain current CPR/First Aid certification, and other duties equally aligned in skill and ability.

70. Thus, Plaintiff is disabled within the meaning of the Plan and is unable to return to work as a Head Strength and Conditioning Coach because his job requires greater physical and mental demand than Plaintiff's capabilities.

***Plaintiff Timely Appeals UNUM's Denial***

71. On or about February 23, 2024, Plaintiff timely appealed UNUM's decision to terminate Plaintiff's LTD benefits.

72. On or about March 6, 2024, UNUM informed Plaintiff it had new information supporting its decision to terminate Plaintiff's LTD benefits and provided Plaintiff with the report of Dr. Arlen Green.

73. In the letter containing the report of Dr. Arlen Green, UNUM informed Plaintiff he had fifteen (15) days, until March 21, 2024, to review and respond to the new medical opinion before UNUM makes a final decision regarding Plaintiff's claim for LTD benefits.

74. Plaintiff requested an additional thirty (30) days from March 21, 2024, to have a full and fair opportunity to review the new medical opinion and respond.

75. In accordance with the requirements of ERISA, UNUM failed to provide Plaintiff with a full and fair opportunity to review the entirely new medical opinion by giving Plaintiff only forty-five (45) days to respond. 29 C.F.R. §2560.506-1.

76. ERISA provides claimants 180 days following the receipt of a notification of an adverse determination within which to appeal the determination in order to give claimants a full and fair opportunity for review and objection.

77. On April 18, 2024, Plaintiff objected to UNUM's denial of LTD benefits and the report of Dr. Arlen Green.

78. The only new or additional evidence or rationale provided by UNUM in its March 6, 2024, letter was the Appeals Physician Written Review written by Dr. Arlen Green, D.O. ("Dr. Green"), who was paid by UNUM to issue the report.

79. On April 25, 2025, UNUM issued its final letter, affirming their decision to terminate Plaintiff's LTD benefits based on the review conducted by Dr. Green.

80. Dr. Green is not licensed to practice medicine in the Commonwealth of Pennsylvania and does not specialize in the treatment of traumatic brain injuries.

81. UNUM came to the self-serving and baseless conclusion that Plaintiff was no longer disabled according to the Plan without ever having Plaintiff undergo an independent medical examination, despite Plaintiff's Plan allowing for such examination.

82. Neither Dr. Green, nor any independent medical examiner hired by UNUM, met with Plaintiff to examine him in person, opting instead to only perform a review of Plaintiff's medical case file.

83. Dr. Green made wholly the same arguments that were given by UNUM's prior medical review.

84. Dr. Green arbitrarily and capriciously emphasized select, favorable portions of Plaintiff's medical records to support his biased decision, while ignoring the full medical opinions of Plaintiff's treating medical team.

85. Dr. Green arbitrarily and capriciously based part of his opinion on the fact that Plaintiff has not undergone additional neuropsychological testing, when none of Plaintiff's treating physicians have recommended additional neuropsychological testing.

86. Despite Plaintiff's symptoms improving, UNUM has failed to identify any evidence that shows Plaintiff is not currently still experiencing symptoms that render him incapable of materially and substantially completing his responsibilities and duties as the Head Strength and Conditioning Coach.

87. UNUM's conclusion that Plaintiff was able to materially and substantially perform the essential duties of his job was premised on a singular day observation of Plaintiff, who has consistently reported that his symptoms have improved, and some days are better than others.

88. UNUM's conclusion that Plaintiff was able to materially and substantially perform the essential duties of his job unreasonably placed heavy reliance on the opinion of Plaintiff's vascular surgeon while ignoring the medical opinions of Plaintiff's other treating physicians.

89. UNUM's conclusion that Plaintiff was able to materially and substantially perform the essential duties of his job was premised on the opinion of an out-of-state licensed doctor who never met with Plaintiff, examined Plaintiff, or even spoke with Plaintiff about his symptoms or his inability to work

90. In reaching the conclusion that Plaintiff is no longer disabled, UNUM's hired doctor engaged in a self-serving, paper-only review of the medical claim file, in which he selected information tending to support a denial of benefits, while ignoring the legitimate bases of Plaintiff's disabling symptoms as documented by his treating medical team.

91. The conclusions of Dr. Green are contrary to the opinions of Plaintiff's treating physicians and contrary to Plaintiff's self-reported complaints of cognitive dysfunction and inability to perform his job duties.

92. At all relevant times, UNUM operated under an inherent financial conflict of interest in denying Plaintiff's LTD claim, as UNUM was both the claim administrator (with full discretion to determine eligibility and to interpret the terms of the Plan), and the payer of the LTD benefits under the Plan.

93. Defendants' denial of Plaintiff's LTD benefits claim was arbitrary, capricious, and constituted an abuse of discretion.

94. UNUM owed a fiduciary duty to Plaintiff, the beneficiary of the Plan.

95. UNUM breached its fiduciary duty to Plaintiff and acted arbitrarily and capriciously in denying Plaintiff's LTD benefits claim by, *inter alia*:

a. Failing to conduct an in-person or telephonic medical examination of Plaintiff, despite having the ability to do so;

b. Relying on the opinions Dr. Green, who is paid for by UNUM to deny benefits;

c. Emphasizing the self-serving opinions of Dr. Green who never examined Plaintiff, while understating, without reason, the opinions of Plaintiff's medical team who treats his traumatic brain injury;

d. Failing to credit, without reason, Plaintiff's self-reported complaints of significant cognitive dysfunction, impairment and inability to perform his job duties;

e. Failing to properly assess Plaintiff's actual job duties;

f. Failing to properly analyze whether Plaintiff was functionally able to perform the physical, mental, and cognitive requirements of his job;

g. Failing to observe Plaintiff for an extended period of time on more than one occasion;

h. Denying Plaintiff's claim for LD benefits when doing so is contrary to the substantial evidence in the claim file; and

i. all while operating under an inherent financial conflict of interest.

## **COUNT I – Violation of ERISA §502(a)(1)**
## **(Improper Denial of Long Term Disability Benefits)**

96. Plaintiff incorporates herein by reference each of the preceding paragraphs as if each were set forth herein in its entirety.

97. By committing the foregoing acts, Defendants have improperly denied Plaintiff benefits to which he is entitled, and, therefore, have violated ERISA §502(a)(1).

98. Defendants' decision is not entitled to arbitrary and capricious or abuse of discretion review, and Defendants' denial of Plaintiff's benefits is not justified under a *de novo* review.

99. The Plan language dose not include a sufficient grant discretionary authority that might entitle Defendants' decision to an arbitrary and capricious standard of review.

100. The claims administrator's decision is not entitled to deference where it is operating under an inherent conflict of interest as both the decision-maker and payor of benefits.

101. Defendants' denial of Plaintiff's benefits under the Plan was arbitrary and capricious.

102. Defendants' determination was contrary to the language of the Plan.

103. Defendants' determination was contrary to the record evidence.

104. As a direct and proximate result of Defendants' violation of ERISA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

105. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' wrongful denial of disability benefits unless and until this Court grants the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants:

(a) Declaring the acts and practices complained of herein to be in violation of ERISA;

(b) Ordering that Plaintiff be reinstated into the Plan;

(c) Ordering that Plaintiff receive benefits under the Plan going forward unless and until such time as Plaintiff no longer meets the Plan's definition of "disability;"

(d) Awarding Plaintiff LTD benefits under the Plan, retroactive to August 22, 2023;

(e) Awarding Plaintiff costs and expenses of this action, together with reasonable attorneys' fees and interest; and

(f) Granting such other and further relief as this Court deems appropriate.

*[signature on following page]*

**CONSOLE MATTIACCI LAW LLC**

Dated: August 20, 2026 BY: ______________________________

Kevin Console, Esquire
Karla Payonk, Esquire
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676
Attorneys for Plaintiff,
Timothy Chiarolanza